**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**ANNA WEATHERLY,** and PAMELA CHARNEY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**THE CLEVELAND CLINIC FOUNDATION**, and **CLEVELAND CLINIC FLORIDA HEALTH SYSTEM NONPROFIT CORPORATION**,

Defendants.

Case No. 25-cv-62530-CIV-AHS

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ 3

I. RELEVANT FACTUAL ALLEGATIONS ........ 5

II. STANDARD OF REVIEW ........ 8

III. ARGUMENT ........ 9

A. Plaintiffs' ECPA and FSCA Claims Have Been Adequately Pled ........ 9

1. The Complaint Adequately Pleads the Necessary Elements for Claims Under the ECPA (Count I) and the FSCA (Count II). ........ 9

2. Plaintiffs Adequately Allege a Tortious and Criminal Purpose Under the ECPA's Crime-Tort Exception. ........ 11

a) The Complaint Adequately Alleges a Tortious and Criminal Purpose. ........ 11

b) Defendants' Reliance on the DPA and BAA Is Improper at this Stage and Does Not Resolve the Crime-Tort Exception as to the Other Trackers. ........ 12

3. The Complaint Alleges Interception by Multiple Third-Party Trackers, Rendering Defendant's Adobe-Only Analysis Unavailing. ........ 13

4. Plaintiffs Sufficiently State a Claim Under the FSCA. ........ 14

B. Plaintiffs' Invasion of Privacy Claim Is Adequately Pled ........ 17

1. Plaintiffs Sufficiently Plead an Intrusion into a Private Quarter. ........ 17

2. Plaintiffs Plausibly Allege a Highly Offensive Intrusion. ........ 18

C. Plaintiffs' Unjust Enrichment Claims (Count IV) are Adequately Pled ........ 19

1. Class Members Conferred a Benefit on Cleveland Clinic. ........ 20

2. The Complaint Seeks Quantifiable Damages. ........ 22

IV. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Cases**

*Agritrade, LP*
*v. Quercia*, 253 So. 3d 28 (Fla. 3d DCA 2017) .......... 20
*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 8, 12
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 8
*Board of Trustees v. Illinois Range, Inc.*,
186 F.R.D. 498 (N.D.Ill.1999) .......... 11
*Botting v Cindy A. Goldstein, P.A.*,
Case No. 15-cv-62113, 2015 U.S. Dist. LEXIS 176463 (S.D. Fla. Dec. 21, 2015) .......... 20
*Bradley v. City of St. Cloud,*
No. 6:12–cv–1348–Orl–37TBS, 2013 WL 3270403, (M.D. Fla. June 26, 2013) .......... 18
*Butler v. State*,
838 So. 2d 554 (Fla. 2003) .......... 16
*Celestine v. Cap. One*,
No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017) .......... 19
*Cunningham v. Dist. Attorney's Office*,
592 F.3d 1237 (11th Cir. 2010) .......... 9
*Doe v. Kaiser Found. Health Plan, Inc.,*
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 14
*Drexlerv. Trans Union, LLC*,
2020 U.S. Dist. LEXIS 248631 (M.D. Fla. Dec. 15, 2020) .......... 11
*Gonzalez v. Eagle Ins. Co.*,
948 So. 2d 1 (Fla. 3d DCA 2006) .......... 20
*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 14
*Hall v. Sargeant*,
No. 9:18-CV-80748, 2019 WL 1359485 (S.D. Fla. Mar. 26, 2019) .......... 18
*Hayden v. Urvan*,
No. 21-cv-82051, 2024 U.S. Dist. LEXIS 157221 (S.D. Fla. Aug. 27, 2024) .......... 23
*In re Marriott Int'l, Inc.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 17, 18
*Jackson v. Birmingham Bd. of Educ.*,
309 F.3d 1333 (11th Cir. 2002) .......... 8
*Kallberg Indus., Ltd. Liab. Co. v. Auto. Experts, Inc.*,
861 F. App'x 321 (11th Cir. 2021) .......... 22, 23

*OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*,
817 F. App'x 686 (11th Cir. 2020) .................................................. 20, 22
*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
667 So. 2d 876 (Fla. 3d DCA 1996) .................................................. 20
*Rebalko v. City of Coral Springs*,
552 F. Supp. 3d 1285 (S.D. Fla. 2020) .................................................. 19
*Resnick v. AvMed, Inc.*,
*693 F.3d 1317 (11th Cir. 2012) .................................................. 19*
*Smart v. Main Line Health*,
No. 2:22-cv-05239, 2024 WL 2943760 (E.D. Pa. June 10, 2024).................................................. 9
*Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co., L.L.C.*,
No. 06-61055, 2007 U.S. Dist. LEXIS 70886 (S.D. Fla. Sep. 25, 2007) .................................................. 11
*Sprogis v. Suntrust Bank*,
No. 6:13--cv--365--Orl--37, 2013 WL 2456090 (M.D. Fla. June 6, 2013) .................................................. 19
*Stoddard v. Wohlfahrt*,
573 So. 2d 1060 (Fla. 5th DCA 1991) .................................................. 19
*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) .................................................. 19
*Watts v. City of Hollywood*,
146 F. Supp. 3d 1254 (S.D. Fla. 2015) .................................................. 18, 19
*Weaver v. Myers*,
229 So. 3d 1118 (Fla. 2017).................................................. 18

**Statutes**

Fla. Stat. § 934.02(7).................................................. 15

**Rules**

Fed. R. Civ. P. 12(c) .................................................. 5

Plaintiffs and class members, through counsel, oppose Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth herein, Plaintiffs respectfully ask that the Court deny the Motion in all respects. Should the Court grant the motion in part or in total, Plaintiffs seek leave to amend their complaint to cure any deficiencies the Court identifies in the pleading.

## I. RELEVANT FACTUAL ALLEGATIONS

The Cleveland Clinic defendants include Cleveland Clinic Foundation and Cleveland Clinic Florida Health System Nonprofit Corporation (collectively "Cleveland Clinic" or "Defendants"). Cleveland Clinic is a prominent, nonprofit academic medical provider headquartered in Cleveland, Ohio, providing healthcare services in at least 50 locations in Florida and over 250 locations in Ohio, in addition to operating www.clevelandclinic.org, the "Website" at issue in this suit. Compl. ¶¶ 2, 9-10. The Website allows website visitors to search for physicians and medical facilities, explore information about health conditions and symptoms, schedule appointments, and access other medical and healthcare information and services. Compl. ¶¶ 2, 4.

The Complaint alleges that third-party "trackers" embedded in the Cleveland Clinic Website, including trackers from Adobe, Google, Amazon, Magnite, Index Exchange, and OpenX, systematically intercept private and potentially sensitive information input by Website visitors, without notice or consent, causing harm to Plaintiffs and class members. Compl. ¶¶ 1, 3-6, 17-50. Without notice to or consent from Website visitors, who had reasonable expectations of privacy, these trackers captured private and sensitive information from them when they used Website functions such as physician or facility/location searches, on-line appointment scheduling, and patient portal logins, and/or searched the Cleveland Clinic medical information Health Library for medical symptoms, health conditions, and/or treatments. Compl. ¶¶ 1, 3-5, 21-22, 51-78, 85-90. This includes

information about the specialties and locations of physicians from whom users are seeking treatment, users' health conditions, symptoms, and medical concerns, locations or facilities where users are seeking treatment, types of medical services users are seeking, use of the patient portal, search queries in the Health Library containing sensitive health information, and more. Compl. ¶¶ 4, 57, 67-78, 102-105. The trackers collected this information in real-time, then transmitted that data back to the third-party companies, such as Adobe, Google, Amazon, Magnite, Index Exchange, and OpenX. Compl. ¶¶ 3, 17-50. The information invisibly gleaned by third-party tracking technologies could then be used or sold by those third-party companies for targeted advertising and other commercial purposes. Compl. ¶¶ 32-33, 40-43, 46-50, 60, 63-65, 87, 93-98. These trackers invisibly intercepted visitors' sensitive health information, without user consent, in real time, and disclosed their sensitive personal information to third parties. Compl. ¶¶ 1, 3-5, 22, 25, 34, 44, 45-50. If generally known, this would create a chilling effect on healthcare communication. Compl. ¶¶ 99-101.

Cleveland Clinic knew that these trackers were embedded in the Website and bears legal responsibility for allowing third parties (Adobe, Google, Amazon, Magnite, Index Exchange, Open X, etc.) to intercept Website visitors' communications. Compl. ¶¶ 3, 61-66; 79-84. The trackers were deliberately implemented by Cleveland Clinic, ignoring federal law, federal guidance about the risks, and their own privacy policy, to monetize information from visitors to the Website. Compl. ¶¶ 56-59, 61-66, 80-90, 124, 140, 148. Furthermore, Cleveland Clinic directly benefits economically from allowing the trackers to operate on its websites. Compl. ¶¶ 56, 83, 96, 98, 151-153. But, importantly, **the third-party trackers have no use to Cleveland Clinic in the ordinary course of its business as a healthcare provider**. Compl. ¶¶ 135.

Cleveland Clinic's conduct violates federal law (HIPAA). Compl. ¶¶ 53-56. Multiple government entities warned healthcare providers, including Cleveland Clinic, about their obligations

to protect against unauthorized disclosure of health information obtained through web-tracking technologies. Compl. ¶¶ 57-58. It was explained that tracker technology could gather identifiable and sensitive health information about a healthcare provider's website visitors without their knowledge, and "Impermissible disclosures of an individual's personal health information to third parties may result in a wide range of harms to an individual or others. Such disclosures can reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, where an individual seeks medical treatment, and more." Compl. ¶ 57. It is clear from their own Notice of Privacy Practices that Cleveland Clinic understands that its Website visitors have an expectation of privacy, as it (falsely) assures that Cleveland Clinic "will not use or disclose your health information for other reasons without your written authorization." Compl. ¶¶ 59-60.

Plaintiffs and class members had no way of knowing the trackers were operating when they visited the Website. Compl. ¶¶ 18, 57, 59-60, 62, 102-105. Plaintiffs had reasonable expectations that their communications with the Cleveland Clinic's Website would remain confidential and not be used for commercial purposes, and they did not consent to the sharing of their health information for commercial or analytics purposes. Compl. ¶¶ 51-60, 127-128, 144-148. In fact, Cleveland Clinic **affirmatively and falsely stated** in their privacy policies that patient health information would not be used for marketing purposes without written authorization (consent). Compl. ¶¶ 59, 87-90. Notwithstanding Defendants' Notice of Privacy Practices, Website visitors were given no meaningful notice of or opportunity to consent to the trackers. Compl. ¶¶ 59, 61, 85-90, 103, 105, 140, 148. Cleveland Clinic's practice of allowing third party trackers to operate on its websites has resulted in injuries to Plaintiffs and class members, including violations of state and federal law, invasion of

privacy, and financial detriment from Cleveland Clinic's unjust enrichment. Compl. ¶¶ 84, 91-101, 118, 126, 131, 147, 149, 156; *see also,* Counts I-IV.

Plaintiffs' and class members' injuries include those anticipated by federal agencies. Compl. ¶¶ 57-58. As pled, their injuries include (but are not limited to): 1) the interception of identifying information along with sensitive health-related information from their interactions with the Website, and use of that information for commercial purposes, in violation of their reasonable expectations of privacy; 2) Cleveland Clinic enriching itself with the premium economic value of their personal health information without consideration or compensation to Plaintiffs and class members; 3) the chilling effect on communication with healthcare entities; 4) the loss of control over how their own sensitive health information is used, once intercepted by third parties; and 5) statutory injuries. Compl. ¶¶ 91-101; *see also,* Counts I-IV and Prayer for Relief.

## II. STANDARD OF REVIEW

The same standard is applied when reviewing a Rule 12(c) motion for judgment on the pleading as when reviewing a Rule 12(b)(6) motion. Such motions should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In ruling on a motion at the pleading stage, "the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true," *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002) (citation omitted).

## III. ARGUMENT

### A. Plaintiffs' ECPA and FSCA Claims Have Been Adequately Pled

#### 1. The Complaint Adequately Pleads the Necessary Elements for Claims Under the ECPA (Count I) and the FSCA (Count II).

Defendants' characterization of Plaintiffs' allegations as mere "generalizations, assumptions, and hypotheticals" fundamentally misreads the Complaint and misapplies the governing standard. A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion. That is, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). Therefore, the question is not whether Plaintiffs have proven their claims, but whether the Complaint plausibly alleges facts sufficient to support them. Here, Plaintiffs have alleged specific individualized facts as opposed to mere conclusions, which plainly satisfies the applicable pleading standard.

Defendants' reliance on *Smart v. Main Line Health*, No. 2:22-cv-05239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) is misplaced. In *Smart*, the plaintiff alleged only that he sought "information about specific health conditions, treatments and services" and without elaboration, failed to identify what health information was communicated, to whom, or when. The Complaint here is materially different. In the instant case, the Complaint contains a section describing the named Plaintiffs' specific experiences using the Cleveland Clinic Website, when they visited the site, what browser they used to access the Website, as well as the type of information that Plaintiffs inputted and alleged was intercepted.

> 102. Plaintiff Anna Weatherly is a patient of Cleveland Clinic in Florida. On several occasions in 2025, Plaintiff accessed the Website using the Edge web browser to search for physicians, schedule an appointments [sic], and to access the Cleveland Clinic patient portal.

> 103. At all relevant times, Plaintiff Anna Weatherly was unaware that her personal health information and data was being shared with third parties.
>
> 104. Plaintiff Pamela Charney is a patient of Cleveland Clinic in Florida. On several occasions in 2024 and 2025, Plaintiff accessed the Website using the Chrome browser to search for doctors; search for treatments, symptoms, and conditions; schedule appointments; and to access the patient portal.
>
> 105. At all relevant times, Plaintiff Pamela Charney was unaware that her personal health information and data was being shared with third parties.

Compl. at ¶¶ 102-105.

In addition to these Plaintiff-specific allegations, the Complaint describes more broadly the types of information that was intercepted by Cleveland Clinic's use of third-party tracking technology. For example, the Complaint states in relevant part:

> 3. Unbeknownst to Website visitors, Cleveland Clinic has knowingly implemented multiple third-party tracking technologies on its Website, including the Adobe Experience Platform Edge Network, Google DoubleClick, Amazon Advertising, Magnite (Rubicon Project), Casale Media, and OpenX trackers (collectively, the "Trackers"). ***When Website visitors search for doctors or medical specialists, research health conditions, seek information about specific medical services, or interact with other health-related content, Cleveland Clinic enables these third parties to intercept these electronic communications without consent***.
>
> 4. The intercepted information includes: (a) the names, genders, languages, specialties, and locations of physicians from whom users are seeking treatment; (b) users' health conditions and medical concerns; (c) the locations or facilities where users are seeking treatment; (d) the types of medical services or procedures users are seeking; (e) users' navigation to the patient portal; (f) search queries containing sensitive health information; and (g) users' attempts to schedule appointments or contact healthcare providers.

Compl. ¶¶ 3-4 (emphasis added).

These individualized, plaintiff-specific factual allegations tied to a concrete and identified interception mechanism are sufficient to sustain claims under the ECPA and the FSCA. Defendants' argument, taken to its logical conclusion, would require Plaintiffs to reproduce a verbatim log of every webpage visited, every search term entered, and every piece of health information submitted before

discovery has even begun – information that is, by definition, in the exclusive possession of Cleveland Clinic. Rule 12(c) does not demand that level of specificity. Courts have consistently recognized that plaintiffs cannot be required at the pleading stage to allege facts accessible only through discovery, and to hold otherwise would improperly convert this motion into a summary judgment proceeding. See, e.g., *Board of Trustees v. Illinois Range, Inc.,*186 F.R.D. 498, 503 (N.D.Ill.1999) (The Court understands the Trustee's limited ability to access information at the pleading stage and will not require the Trustee, "to include in [his] pleadings information only available from the defendants through discovery). See also, *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co., L.L.C.*, No. 06-61055, 2007 U.S. Dist. LEXIS 70886, at *17-18 (S.D. Fla. Sep. 25, 2007) (The Court agrees that limited access to information at the pleading stage should not hinder Plaintiff from bringing their claims against these alleged subsequent transferees). Finally, to the extent Defendants suggest that their own Answer somehow renders Plaintiffs' allegations implausible, that argument fails as a matter of law. Denials in an answer are not evidence and cannot be weighed against a complaint at this stage of the litigation. See e.g., *Drexlerv. Trans Union, LLC*, 2020 U.S. Dist. LEXIS 248631, at *4 (M.D. Fla. Dec. 15, 2020).

**2. Plaintiffs Adequately Allege a Tortious and Criminal Purpose Under the ECPA's Crime-Tort Exception.**

Defendants' argument that Plaintiffs cannot establish a criminal or tortious purpose under the ECPA's crime-tort exception is both legally flawed and factually premature. Here, Defendants' analysis again improperly focuses on Adobe in isolation while ignoring the broader landscape of tracking technologies alleged in the Complaint.

a) The Complaint Adequately Alleges a Tortious and Criminal Purpose.

Defendants' contention that Cleveland Clinic lacked a criminal or tortious purpose in deploying tracking technologies on its Website is a factual question that cannot be resolved at the pleading stage.

The Complaint alleges that Cleveland Clinic knowingly deployed multiple third-party tracking technologies that collected and transmitted Plaintiffs' sensitive health information to third parties for advertising and commercial purposes. See Compl. ¶¶ 1, 3-5, 56. These allegations, taken as true, plausibly support an inference that Cleveland Clinic's conduct was undertaken for a tortious purpose, namely the unauthorized disclosure of protected health information (PHI) in violation of HIPAA and applicable state law. At the motion to dismiss or judgment on the pleadings stage, Plaintiffs are not required to prove tortious intent; they need only plead facts that plausibly give rise to such an inference. *Iqbal*, 556 U.S. at 678 (A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged). The Complaint does so here.

b) Defendants' Reliance on the DPA and BAA Is Improper at this Stage and Does Not Resolve the Crime-Tort Exception as to the Other Trackers.

As an initial matter, the DPA and BAA are extrinsic documents that are not part of the pleadings and cannot properly be considered on a motion for judgment on the pleadings. Defendants' reliance on these agreements to negate Plaintiffs' allegations of tortious purpose is therefore procedurally improper. However, even if the Court were to consider the DPA and BAA with respect to Adobe, those agreements say nothing about the other tracking technologies identified in the Complaint. Defendants do not represent that equivalent data protection or business associate agreements exist with Google DoubleClick, Amazon Advertising, Magnite (Rubicon Project), Casale Media, or OpenX. These platforms are well-known advertising and data monetization companies whose core business involves aggregating and exploiting user data for advertising and resale purposes. The deployment of these trackers on a healthcare website, where visitors are sharing sensitive health information, plausibly

supports an inference that Cleveland Clinic's purpose, whether intentional or reckless, was tortious in nature.

Further, Defendants' suggestion that a BAA with Adobe forecloses any HIPAA violation, and therefore any tortious purpose, oversimplifies both the law and the facts. The existence of a BAA does not immunize a covered entity from liability if it discloses PHI to third parties outside the scope of that BAA, or to entities with whom no BAA exists. The Complaint alleges the transmission of PHI to multiple third-party advertising platforms that are not Adobe's business associates. Under these circumstances, dismissal of Plaintiffs' ECPA claims on the basis that no tortious or criminal purpose exists is unwarranted.

**3. The Complaint Alleges Interception by Multiple Third-Party Trackers, Rendering Defendant's Adobe-Only Analysis Unavailing.**

Defendants' argument that Adobe is not a third-party eavesdropper under the ECPA and FSCA because of the Data Processing Agreement ("DPA") and Business Associate Agreement ("BAA") is premature, factually incomplete, and legally unavailing at this stage of the proceedings. As stated above, Defendants' argument addresses only one of the tracking technologies identified in the Complaint. The Complaint alleges the presence and use of multiple third-party tracking technologies on Cleveland Clinic's Website, including not only Adobe, but also Google DoubleClick, Amazon Advertising, Magnite (Rubicon Project), Casale Media, and OpenX trackers. See Compl. ¶¶ 1, 3, 22-50. Defendants' motion conspicuously ignores these additional trackers entirely and makes no effort to argue that DPAs or BAAs exist with each of these entities, or that each of these entities similarly refrains from using intercepted data for its own advertising, aggregation, or resale purposes. Indeed, several of the trackers identified in the Complaint, including Google DoubleClick, Amazon Advertising, and Magnite are well-known advertising and data monetization platforms whose core

business model is precisely the aggregation and resale of user data for advertising purposes. Unlike Adobe, these platforms plainly do not function as mere extensions of Cleveland Clinic. Rather, they are quintessential third-party eavesdroppers of the type contemplated by the ECPA and FSCA.

Even with respect to Adobe, Defendants' argument relies on extrinsic evidence (the DPA and BAA) which is not properly before the Court on a motion for judgment on the pleadings. A motion for judgment on the pleadings under Rule 12(c) is decided on the pleadings alone, and the Court must accept all well-pleaded factual allegations in the Complaint as true. The Complaint alleges that Adobe and the other tracking technologies intercepted Plaintiffs' communications and transmitted sensitive health information to third parties for advertising and other commercial purposes. Whether contractual agreements between Cleveland Clinic and Adobe effectively transform Adobe into a mere extension of Cleveland Clinic, and thus precludes a finding of third-party interception, is a question of fact that cannot be resolved at the pleading stage.

Defendants' reliance on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), and *Doe v. Kaiser Found. Health Plan, Inc.,* 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)*,* is similarly misplaced. Those cases were decided on more complete factual records and turned on the specific contractual and operational circumstances of the software vendors at issue. Here, no such record has been developed. Plaintiffs are entitled to discovery on whether Adobe and the various other tracking technologies deployed on Cleveland Clinic's Website operate as true third-party eavesdroppers. Given that the Complaint adequately alleges interception by multiple third-party trackers beyond Adobe, Defendants' motion must be denied.

**4. Plaintiffs Sufficiently State a Claim Under the FSCA.**

Defendants' Motion fails because it mischaracterizes both Plaintiffs' legal theory and the well-pleaded factual allegations, which must be accepted as true at this stage. Properly understood, the

Complaint alleges a straightforward violation of the Florida Security of Communications Act ("FSCA"). Defendants incorrectly reframe Plaintiffs' claims as a challenge to "any tracking technology." In reality, Plaintiffs allege the intentional interception of the contents of confidential healthcare-related communications made through Defendants' Website. Cleveland Clinic operates a large healthcare system and a digital platform that allows users to search for physicians, research symptoms and medical conditions, schedule appointments, and access patient services. (Compl. ¶¶ 2, 9-10). In using these features, Plaintiffs transmitted highly sensitive information reflecting the substance and meaning of their communications—precisely the type of "contents" protected under Fla. Stat. § 934.02(7).

The Complaint alleges that Defendants embedded third-party tracking technologies (including Adobe, Google, Amazon, Magnite, Index Exchange, and OpenX) that captured, in real time, users' interactions with these healthcare functions. Compl. ¶¶ 1, 3-6, 4, 57, 67-78. This included physician searches, appointment scheduling, patient portal usage, and inquiries into symptoms, diagnoses, and treatment options. *Id.* These allegations describe interception of the substance, purport, or meaning of communications—not merely metadata or routine analytics.

Critically, Plaintiffs allege that this interception occurred contemporaneously with transmission, without user knowledge or consent, and that the captured data was transmitted to third parties for commercial purposes, including targeted advertising. Compl. ¶¶ 3-5, 22, 25, 32, 40-43, 44-50, 60, 63-65, 87. This is not routine data collection; it is a deliberate scheme to intercept and monetize sensitive healthcare communications. Defendants' suggestion that Plaintiffs' theory would impose liability on all websites ignores these limiting facts. Plaintiffs challenge not ordinary analytics, but the intentional interception of confidential healthcare communications, where privacy expectations are at

their highest. Cleveland Clinic's own privacy representations reinforce those expectations by assuring users their health information would not be disclosed without authorization. Compl. ¶¶ 59-60.

The Complaint also plausibly alleges intent. Defendants knowingly implemented these trackers and permitted third parties to access user communications despite government warnings that such technologies risk impermissible disclosure of sensitive health information. Compl. ¶¶ 57-58, 61-66, 79-84. Plaintiffs further allege that Defendants deployed these tools to monetize user data and directly benefited from doing so. Compl. ¶¶ 56, 83, 96, 151-153. Plaintiffs likewise plausibly allege lack of consent. Users were not informed that their sensitive healthcare-related communications would be intercepted and disclosed to third parties. Compl. ¶¶ 18, 59, 61, 85-90. To the contrary, Defendants represented that such information would not be used for marketing without authorization, and Plaintiffs relied on those assurances. Compl. ¶¶ 59, 61, 66, 87-90. These allegations foreclose any consent defense at the pleading stage.

Defendants' reliance on the Florida Digital Bill of Rights ("FDBR") is likewise ineffective. The FDBR addresses permissible data processing practices under certain conditions; it does not authorize the undisclosed, real-time interception of the contents of private communications. The statutes operate in harmony: entities may collect and use data consistent with the FDBR, but they may not intercept communications in violation of the FSCA. *See Butler v. State*, 838 So. 2d 554, 556 (Fla. 2003). Here, Plaintiffs allege conduct (surreptitious interception and disclosure of sensitive health communications) that falls squarely within the FSCA's prohibitions regardless of any generalized data-use permissions in the FDBR.

Finally, Plaintiffs allege concrete harms, including invasion of privacy, loss of control over sensitive health information, diminution in the value of that data, unjust enrichment, and a chilling effect on communications with healthcare providers. (Compl. ¶¶ 91-101). These are precisely the types

of harms associated with unlawful interception of communications. *See generally In re Marriott Int'l, Inc.,* 440 F. Supp. 3d 447 (D. Md. 2020), *see also* Order Granting in Part Def. Mot. to Dismiss, 1:21-MD-02994 at ECF 104 (S.D. Fla. May 10, 2022).

Accordingly, Plaintiffs have plausibly alleged that Defendants intentionally intercepted the contents of their electronic communications without consent in violation of the FSCA.

**B. <u>Plaintiffs' Invasion of Privacy Claim Is Adequately Pled</u>**

**1. Plaintiffs Sufficiently Plead an Intrusion into a Private Quarter.**

The Complaint plausibly alleges an actionable intrusion upon seclusion under Florida law. Plaintiffs allege that Defendants deliberately embedded third-party tracking technologies that intercepted their communications in real time as they used the Website's core healthcare functions. Compl. ¶¶ 1, 3-6, 17-50, 51-52, 57, 67-78. This is not after-the-fact access to stored data, but contemporaneous interception—the functional equivalent of electronic eavesdropping. Defendants' attempt to characterize this as intrusion into a generic "website" misses the mark. Plaintiffs allege intrusion into confidential healthcare-related communications within a provider-controlled environment. The Website allows users to search for doctors, schedule appointments, access patient portals, and research medical conditions. Compl. ¶ 2. In doing so, users necessarily disclose highly sensitive medical information—long recognized as among the most private categories of data.

Plaintiffs further allege that Defendants intercepted information including health conditions, symptoms, treatment interests, and provider selections; assured users such information would remain confidential; and nevertheless disclosed it without notice or consent. Compl. ¶¶ 4, 57, 59-61, 67-78, 85-90, 102-105, 127-128, 144-148. These allegations establish a reasonable expectation of privacy even under Florida's narrow construction. Defendants' reliance on cases involving access to stored

records (*Hall*, *Watts*, *Bradley*) is misplaced.[1] Those cases did not involve real-time interception of communications. Here, the alleged conduct is far more invasive and akin to digital wiretapping.

**2. Plaintiffs Plausibly Allege a Highly Offensive Intrusion.**

The Complaint also plausibly alleges a highly offensive intrusion. Defendants knowingly deployed tracking technologies to capture and monetize sensitive health-related communications, transmitted that information to third parties for advertising purposes, did so without consent, and proceeded despite government warnings about the risks. Compl. ¶¶ 32, 40-43, 56-59, 57-58, 80-86. The unauthorized interception and commercialization of medical information—one of the most sensitive categories of personal data—would plainly be offensive to a reasonable person. Courts have long recognized that medical information lies at the core of privacy protections. The unauthorized interception and dissemination of such information—particularly for advertising and commercial purposes—is precisely the type of conduct that a reasonable person would find deeply offensive. *See generally In re Marriott*, 440 F. Supp. 447, *see also Weaver v. Myers*, 229 So. 3d 1118 (Fla. 2017) (holding that Florida's constitutional privacy right provides broader, more fundamental protection for medical information).

Defendants' reliance on *Iqbal* is unpersuasive. The Complaint contains detailed factual allegations regarding the identity of the trackers, how they operate, the data intercepted, the real-time nature of the interception, and Defendants' intent. Compl. ¶¶ 1-6, 17-50, 56-66, 67-78, 80–90. These are concrete facts, not conclusory allegations. Plaintiffs also allege concrete harms, including loss of control over sensitive health information, unauthorized commercialization, invasion of privacy,

[1] *Hall v. Sargeant*, No. 9:18-CV-80748, 2019 WL 1359485, at *7 (S.D. Fla. Mar. 26, 2019), *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254 (S.D. Fla. 2015), *Bradley v. City of St. Cloud,* No. 6:12–cv–1348–Orl–37TBS, 2013 WL 3270403, at *4–5 (M.D. Fla. June 26, 2013).

economic injury, and a chilling effect on healthcare communications. Compl. ¶¶ 91-101, 147, 149, 154; see also *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012).

Defendants' reliance on cases such as *Watts*, *Celestine*, and *Sprogis* is misplaced because those cases involved limited access to non-medical data, not real-time interception and commercialization of sensitive healthcare communications.[2] Likewise, *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) involved voluntary disclosure to a provider—not undisclosed transmission to third-party advertisers. Nor can Defendants rely on alleged HIPAA compliance or the ubiquity of tracking technologies. Such arguments depend on facts outside the pleadings and, in any event, do not negate the offensiveness of secretly intercepting and monetizing sensitive health-related communications; particularly where Defendants' own privacy policies promised otherwise. Compl. ¶¶ 59-60, 87-90.

Accepting Plaintiffs' allegations as true, Defendants secretly intercepted sensitive healthcare communications, transmitted them to third parties, did so for commercial gain, without consent, and contrary to their own representations. Compl. ¶¶ 1, 3-5, 25, 32, 40-43, 56, 59, 67-78, 80-86. Such conduct plausibly meets the standard of being "atrocious" and "utterly intolerable in a civilized community." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1333 (S.D. Fla. 2020) (explaining that intrusion upon seclusion requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" (quoting *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991)).

### C. Plaintiffs' Unjust Enrichment Claims (Count IV) are Adequately Pled

In order to properly plead a claim for unjust enrichment, plaintiff must allege that: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily

[2] *Watts,* 146 F. Supp. 3d at 1268, *Celestine v. Cap. One*, No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017), *Sprogis v. Suntrust Bank*, No. 6:13--cv--365--Orl--37, 2013 WL 2456090 (M.D. Fla. June 6, 2013).

accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff. *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3d DCA 2017); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). "At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other." *Gonzalez v. Eagle Ins. Co.*, 948 So. 2d 1, 3 (Fla. 3d DCA 2006).

Contrary to Defendants' argument, Plaintiffs' unjust enrichment claim is adequately pled, because Plaintiffs plausibly alleged class members conferred a benefit on Cleveland Clinic, which Cleveland Clinic voluntarily accepted and retained, and that it would be inequitable for Cleveland Clinic to retain that benefit "without paying [Plaintiffs] the value thereof." *Id.* Contrary to Defendants' arguments, Plaintiffs have adequately pled a benefit conferred and seek an appropriate remedy (restitution and/or disgorgement) that is quantifiable and measurable.

In addition, Plaintiffs are permitted to plead unjust enrichment in the alternative, and such claims should not be dismissed at the pleading stage. *Botting v Cindy A. Goldstein, P.A.*, Case No. 15-cv-62113, 2015 U.S. Dist. LEXIS 176463 (S.D. Fla. Dec. 21, 2015).

**1. Class Members Conferred a Benefit on Cleveland Clinic.**

When Plaintiffs and class members visited the Website, they unknowingly and involuntarily conferred a benefit on Cleveland Clinic, as Defendants were covertly allowing third-party trackers to intercept visitors' private data, and that data had commercial value to Defendants. Compl. ¶¶ 151-152. Defendants challenge Plaintiffs' pleading on the issue of conferral of benefit, citing *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 692-93 (11th Cir. 2020). In that case, the Eleventh Circuit affirmed a trial court ruling that the allegations in support of an unjust enrichment

claim were no more than a formulaic recitation of the elements of the cause of action. However, in contrast to the allegations before that court, what Plaintiffs set forth in their Complaint here is not a formulaic or conclusory recitation of the elements of the cause of action. Contrary to Defendants' assertions, Plaintiffs have specifically pled the nature of the intercepted information (data) they and class members provided to Cleveland Clinic via the Website. Compl. ¶ 4; ¶ 102 (Anna Weatherly specific allegations); ¶ 104 (Pamela Charney specific allegations). Plaintiffs have alleged that the intercepted information they and class members provided via the Website included: (a) information about physicians and facilities from whom users are seeking treatment; (b) users' health conditions and medical concerns; (c) the types of medical services or procedures users are seeking; (e) users' use of the patient portal including to communicate with providers; (f) search queries containing sensitive health information; and (g) appointment scheduling information. Compl. ¶¶ 4, 102, 104.

The Complaint also sets forth specific factual allegations regarding the direct benefit conferred on Defendants from their intercepted data, due to the monetization of the data intercepted by those trackers. See, e.g., Compl. ¶¶ 56, 65, 80-83, 93-98, 124, 148, 151-156. For example, in paragraph 124, Plaintiffs allege:

> . . (d) Cleveland Clinic maintains ongoing relationships with these third parties and continues to facilitate their interception of user communications; (e) Cleveland Clinic receives **benefits from this arrangement, including analytics data and advertising capabilities**, creating a quid pro quo relationship.

Plaintiffs plainly allege that personal, medical data has significant commercial value, and data brokers can sell sensitive personal data, intercepted and harvested from website visits for a premium. *See, e.g.,* Compl. ¶¶ 93-95. Plaintiffs allege that there is an extensive market for intercepted health data, and sales of intercepted data can be lucrative. Compl. ¶¶ 96-98. And they allege that Plaintiffs and class members have not been compensated for the economic value of their personal, health-related data, while Cleveland Clinic did receive a financial benefit for allowing the interception of that data. Compl.

¶¶ 93-98, 151-156. These include are specific factual allegations in the Complaint supporting the claims that the interception of Plaintiffs' private data *conferred an unjust benefit* on Defendant, and that Plaintiffs did not financially benefit from this unauthorized interception of their personal data, and in fact were given *no consideration for the benefit conferred*. *Id.* From these *specific* factual allegations, the Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cf, OJ Commerce, LLC,* 817 Fed. App'x at 692-693.

**2. The Complaint Seeks Quantifiable Damages.**

Plaintiffs allege that they suffered a quantifiable economic injury. Under Florida law, "damages for unjust enrichment can be based on either (1) the market value of the services; or (2) the value of the services to the party unjustly enriched." *Kallberg Indus., Ltd. Liab. Co. v. Auto. Experts, Inc.*, 861 F. App'x 321, 323 (11th Cir. 2021) (quotation omitted). Here, Plaintiffs seek the latter. Specifically, in their requests for a remedy for unjust enrichment, Plaintiffs seek "***restitution and disgorgement of all profits, benefits, and other compensation obtained by Cleveland Clinic from its wrongful conduct***." Compl. at ¶ 156 and Prayer for Relief (g) (emphasis added). That is, they want to recoup the monetary value of their data to Cleveland Clinic, and their measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched.

In support of this request for relief, Plaintiffs allege that Cleveland Clinic enriched itself with the non-consensual interception of their private information, without providing any consideration or compensation to Plaintiffs and class members. See, e.g., Compl. ¶¶ 98, 152 (explaining the benefits conferred on Cleveland Clinic), 153 ("Cleveland Clinic has retained this benefit under circumstances which make it inequitable to do so ***without payment of its value to Plaintiffs***") (emphasis added), and 155 ("It would be unjust and inequitable to allow Cleveland Clinic to retain the benefits of its unlawful conduct."). Plaintiffs will need discovery from Defendants, and possibly the assistance of an expert,

to determine the extent and amount of Cleveland Clinic's enrichment and thus determine the amount of compensation/ restitution/ disgorgement due, but the remedy sought is clearly quantifiable, and calculation will not require "speculation, conjecture, or guesswork." *Hayden v. Urvan*, No. 21-cv-82051, 2024 U.S. Dist. LEXIS 157221, at *32 (S.D. Fla. Aug. 27, 2024).

Contrary to the impression one would get from Defendants' argument, Plaintiffs are not seeking damages based upon the diminution in value of their personal data, because, as Defendants note, they did not and do not wish to sell it. What Plaintiffs intended to communicate when pleading that they suffered "the loss of the economic value of their personal data" (Compl. ¶ 154) is that Cleveland Clinic benefitted from the economic value of Website visitors' personal data without providing any compensation to Plaintiffs and class members for wrongful use of that data. While this concept may have been unartfully pled in Compl. ¶ 154, the request for relief in Compl. ¶ 156 makes it clear that the relief requested is not for diminution in future market value of their personal data but rather "the value of the services to the party unjustly enriched." *Kallberg Indus., Ltd. Liab. Co.*, 861 F. App'x at 323. Thus, Plaintiffs believe that Count IV, read as a whole, is adequately pled.

Additionally, and again contrary to Defendants' argument, it is clear from reading Count IV as a whole that Plaintiffs are not seeking damages for loss of privacy as a remedy for their unjust enrichment claim. See, Compl. ¶ 156. Therefore, the Court need not consider whether such damages are "quantifiable" in its consideration of Plaintiffs' unjust enrichment claim. Restitution, disgorgement of profits and benefits, and/or other compensation are the types of remedies typically awarded for unjust enrichment claims, and that is precisely what Plaintiffs seek here. Compl. ¶ 156; *Kallberg Indus., Ltd. Liab. Co.*, 861 F. App'x at 323. In their motion, *Defendants have not challenged the remedies Plaintiffs actually seek*. Thus, Defendants' Motion should be denied as to Count IV.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully ask the Court to deny Defendants' Motion for Judgment on the Pleadings in its entirety. Should the Motion be granted in any respect, Plaintiffs request leave to amend the complaint.

Dated May 8, 2026

Respectfully submitted,

*/s/Justin R. Parafinczuk, Esq.*
Justin Parafinczuk, Esq.
Jason B. Wolf, Esq.
Rachel Cowen-Suarez, Esq.
Steven D. Resnick, Esq. (*pro hac vice pending)*
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel. (954) 462-6700
Fax (954) 462-6567
Emails: pleadings@parawolf.com
clevelandclinic@parawolf.com
jparafinczuk@parawolf.com
jwolf@parawolf.com
rcowen@parawolf.com
sresnick@parawolf.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Justin R. Parafinczuk*
Justin R. Parafinczuk, Esq.