**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.: 25-cv-62530-CIV-AHS**

**ANNA WEATHERLY,** and
**PAMELA CHARNEY,** on
behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

**THE CLEVELAND CLINIC FOUNDATION,**
and **CLEVELAND CLINIC FLORIDA**
**HEALTH SYSTEM NONPROFIT**
**CORPORATION,**

Defendants.

_______________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants The Cleveland Clinic Foundation and Cleveland Clinic Florida Health System Nonprofit Corporation (collectively "Cleveland Clinic"), hereby submit this reply in support of their Motion for Judgment on the Pleadings [ECF No. 22] (the "Motion"), and state:

**A. <u>Plaintiffs Cannot Resuscitate Their Legally Deficient Wiretap Claims.</u>**

**1. Plaintiffs' allegations do not support violations of the ECPA or FSCA.**

Plaintiffs assert that the limited, cursory allegations in the Complaint purportedly reflecting their experience with the Website are sufficient. *See* [ECF No. 56], Resp. at 9–10. Plaintiffs are wrong. Their allegations do not identify any actual searches or other webpage interaction reflecting any communication of actual health conditions, doctors, appointments or treatment information transmitted by either Plaintiff. Without allegations about the actual communications Plaintiffs transmitted, Plaintiffs cannot sustain their ECPA and FSCA claims.

Absent an actual communication, there could never be an interception. Plaintiffs distort reality by attempting to distinguish their conclusory allegations from those in *Smart v. Main Line Health*, No. CV 22-5239, 2024 WL 2943760, at *2 (E.D. Pa. June 10, 2024). Resp. at 9–10. To be clear, the plaintiff in *Smart* alleged that he used the defendant's "website since 2018 to engage in communications that included individually-identifiable patient health information about his past, present, or future health conditions, including requests for information about specific [defendant] providers and locations, and information about specific health conditions, treatments, and services." 2024 WL 2943760, at *2 (internal quotations omitted). These "general averments" are virtually identical to Plaintiffs' allegations that contain no facts regarding "what information Plaintiff[s] actually communicated" or "when exactly such information was communicated" or "which specific webpages [Plaintiffs] clicked on." *Id.* at *3. Plaintiffs must plead facts demonstrating "what specific [] information Plaintiffs [*themselves*] provided" to Cleveland Clinic to support any inference that their information was actually intercepted, not merely that some

"hypothetical visitor['s]" information could have been intercepted. *Id.* Plaintiffs' failure to do so warrants the same result as in *Smart* and the progeny of nationwide case law cited in the Motion that Plaintiffs failed to address. *See* Mot. at 5-6.

Plaintiffs insist the information necessary to plead their wiretap claims is exclusively within Cleveland Clinic's possession. *See* Resp. at 10–11. But what is missing is not server-side, technical discovery from Cleveland Clinic, it is the basic facts showing, at a minimum, what Plaintiffs searched on the Website and when, which is unquestionably in their control. Plaintiffs are not entitled to correct such pleading deficiencies through discovery. *See, e.g., Ocean Reef Charters, LLC v. Travelers Prop. Cas. Co.*, No. 23-CV-81222-BER, 2024 WL 4453730, at *3 (S.D. Fla. Oct. 9, 2024). Plaintiffs' failure to plead their own intercepted communications warrants entry of judgment on Counts I and II.

Moreover, Plaintiffs' citation to *Drexler v. Trans Union, LLC*, No. 8:20-CV-2366-30JSS, 2020 WL 8299761, at *2 (M.D. Fla. Dec. 15, 2020) is inapposite. Resp. at 11. In *Drexler*, the defendant moved to dismiss under Rule 12(b)(6) prior to answering. 2020 WL 8299761, at *2. Accordingly, *Drexler* neither involved a Rule 12(c) motion nor was there any answer on file for consideration. *Id.* Plaintiffs ignore that on a Rule 12(c) motion, the "[c]ourt ***may consider all of the pleadings, including the complaint, answer***, counterclaim, and answer to the counterclaim." *Melendez v. Bank of Am. Corp.*, No. 17-CV-60542-WPD, 2018 WL 1092546, at *1 (S.D. Fla. Feb. 2, 2018) (emphasis added). Additionally, on a Rule 12(c) motion, facts alleged in an answer "are taken as true . . . to the extent that they have not been denied ***or do not conflict with those of the complaint***." *Barrocos of Fla. v. Elmassian*, No. 11-22393-CIV, 2011 WL 13223913, at *3 (S.D.

Fla. Sept. 29, 2011) (internal quotations and citations omitted). As discussed below, Cleveland Clinic's Answer[1] supplies critical admissions which may be considered by the Court.

**2. Plaintiffs' factually unsupported arguments do not demonstrate a criminal or tortious purpose for Plaintiffs' ECPA claim.**

Plaintiffs' characterization of the crime-tort exception as a "factual question that cannot be resolved at the pleading stage" is baseless. Resp. at 11. The only tortious purpose Plaintiffs assert is a HIPAA violation. *See id.* at 12. Yet this exact argument has repeatedly been rejected at the motion to dismiss stage by numerous courts across the country. *See, e.g., T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *3, 4 (N.D. Ga. Dec. 10, 2024), *appeal dismissed*, No. 25-10105-JJ, 2025 WL 1894802 (11th Cir. May 9, 2025) (rejecting application of the crime-tort exception based on allegations that the defendant "had a purpose that was tortious, criminal, and designed to violate [] HIPAA" and dismissing ECPA claim"); *Doe v. Talkiatry Mgmt. Servs., LLC* ("*Talkiatry*"), 816 F. Supp. 3d 1206, 1209-10 (C.D. Cal. 2026) (same); *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (same); *Doe v. Kaiser Found. Health Plan, Inc.* ("*Kaiser*"), No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (same). Plaintiffs offer no contrary authority to support their argument. Whether through Cleveland Clinic's use of Adobe Analytics or the Programmatic Advertising Tools, Plaintiffs cannot demonstrate a criminal or tortious purpose by alleging HIPPA violations and their ECPA claim fails on its face.

[1] On April 17, 2026, pursuant to the Court's April 15, 2026, Order [ECF No. 42], Cleveland Clinic filed its Amended Answer and Affirmative Defenses to reflect withdrawal of Cleveland Clinic' First and Twelfth Affirmative Defenses and amendments to Cleveland Clinic's Fourth and Fifth Affirmative Defenses. *See* [ECF No. 43]. The limited amendments did not change any of the factual allegations in Cleveland Clinic's Answer. For clarity, any reference to Cleveland Clinic's "Answer" herein is for the amended, operative pleading.

Cleveland Clinic's Answer underscores the implausibility of the crime-tort exception because it supplies missing information regarding: (1) the nature of Cleveland Clinic's relationship with Adobe; and (2) the specific location of the Programmatic Advertising Tools. For Adobe Analytics, the Answer admits how Cleveland Clinic uses Adobe on its Website and explains the legal limitations on that use set forth in the DPA and BAA. *See, e.g.*, Am. Answ. & Aff. Defs. ¶¶ 1, 3 [ECF No. 43]. These admissions do not conflict with the Complaint because Plaintiffs never allege the type of Adobe product utilized on the Website out of Adobe's suite of products.[2] Plaintiffs do, however, allege that Adobe provides website "analytics," which is precisely the function of Adobe Analytics. *See* Compl. ¶ 23. These admissions preclude any potential HIPAA violation.

For the Programmatic Advertising Tools, Plaintiffs merely offer a strawman argument regarding the purported absence of an equivalent DPA or BAA. *See* Resp. at 12. To be clear, unlike Plaintiffs' screenshots showing Adobe Analytics on the Relevant Webpages, the Complaint never identifies a single webpage that contains the Programmatic Advertising Tools. *See* Compl. ¶¶ 68–77. It is only through Cleveland Clinic's admissions that this missing, critical information is provided: among the Relevant Webpages, the Programmatic Advertising Tools are only present on the public-facing Health Library. *See, e.g.*, Am. Answ. & Aff. Defs. ¶¶ 1, 66–67. As such, there is no conflict between the Answer and the Complaint regarding the location of the Programmatic

[2] Cleveland Clinic's admissions regarding its BAA and DPA are sufficiently incorporated into the Answer such that Plaintiffs' argument on considering "extrinsic documents" misses the mark. *See* Resp. at 12. Nevertheless, on a motion for judgment on the pleadings, courts may consider extrinsic documents that are "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 113 (11th Cir. 2002). Plaintiffs do not dispute the authenticity of the BAA or DPA, the latter of which is a publicly available template on Adobe's website. Both documents are undoubtedly central to Plaintiffs' claims because they govern the very relationship between Cleveland Clinic and Adobe, including the use of any data collected by Adobe, that Plaintiffs have placed at issue.

Advertising Tools. Plaintiffs completely fail to address Cleveland Clinic's argument and supporting case law that the Health Library does not as a matter of law collect or receive PHI; this acts as an abandonment by Plaintiffs of any plausible claim of a HIPAA violation. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). Accordingly, whether or not the Programmatic Advertising Tools are subject to a BAA or DPA is immaterial and does not change Plaintiffs' failure to allege a criminal or tortious purpose.

**3. Plaintiffs' allegations rest almost exclusively on Adobe while failing to allege facts demonstrating the presence of the Programmatic Advertising Tools.**

As an initial matter, Plaintiffs entirely misconstrue *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) and *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) by stating "[t]hose cases were decided on more complete factual records." Resp. at 14. Both *Graham* and *Kaiser* (1) were decided on a Rule 12(b)(6) motion without any consideration beyond the complaint, and (2) recognized the legal insufficiency of the asserted wiretap claims from the face of the complaint. As in *Graham* and *Kaiser*, Plaintiffs' wiretap claims are insufficient at the pleading stage. No factual record is necessary to enter judgment in Cleveland Clinic's favor on Plaintiffs' implausible ECPA and FSCA claims.

Plaintiffs also argue that Cleveland Clinic's focus on Adobe means that it has failed to consider the Programmatic Advertising Tools in the Complaint. *See* Resp. at 13. But a defendant cannot be blamed for not specifically addressing what is not present in the Complaint. The Complaint only specifically alleges the presence of Adobe while pleading no facts showing which of the Programmatic Advertising Tools appears on which Relevant Webpage. *See* Compl. ¶¶ 68–77. Accordingly, Cleveland Clinic's admissions in its Answer demonstrate there is no factual dispute that the Programmatic Advertising Tools exist only on the public-facing Health Library.

Plaintiffs ignore this undisputed (and indisputable) fact because their ECPA and FSCA claims cannot survive based merely on the existence of Programmatic Advertising Tools on a publicly accessible database of health information that does not collect or transmit PHI as a matter of law.

Plaintiffs' characterization of the Programmatic Advertising Tools as "well-known advertising and data monetization companies" does not move the needle. Resp. at 12. The Website is not hidden; it is accessible to internet users through the present day, and Plaintiffs allegedly accessed the Website prior to filing the Complaint. Given that Plaintiffs identified Adobe on the Relevant Webpages and included specific screenshots of such in the Complaint, Plaintiffs presumably could have done the same with the Programmatic Advertising Tools. But Plaintiffs did not. Nor have Plaintiffs sought leave to amend their Complaint in the six months post-filing to allege anything beyond mere generalities and speculation regarding the Programmatic Advertising Tools. This is not a scenario where Plaintiffs do not have access to basic facts to sufficiently plead their FSCA and ECPA claims. Rather, the facts do not exist, and Plaintiffs' legally deficient claims cannot be salvaged through discovery. *See, e.g., TMoss v. Liberty Mut. Fire Ins. Co.*, No. 3:16-CV-677-J-39JBT, 2017 WL 4676629, at *7 (M.D. Fla. Aug. 18, 2017).

**B. <u>Plaintiffs' Invasion of Privacy Claim Fails as a Matter of Law</u>**

Plaintiffs miss the mark entirely in failing to address that the Website cannot, as a matter of law, constitute a private quarter or place because it is not a physical location. Plaintiffs' focus on the allegedly sensitive nature of communications on the Website is irrelevant. Indeed, "[c]ourts in this district have found that accessing medical records and accessing a plaintiff's driver's license information are not intrusions into a private quarter." *Celestine v. Cap. One*, No. 17-20237-CIV, 2017 WL 2838185, at *3 (S.D. Fla. June 30, 2017) (citations omitted). That is because "Florida law explicitly requires an intrusion into a private place and not merely into a private activity." *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011); *see also Cicale v. Pro.*

*Parking Mgmt. Corp.*, No. 24-61146-CIV, 2025 WL 3541417, at *4 (S.D. Fla. Sept. 11, 2025) ("[T]his Court cannot find Defendants accessing motor vehicle records to be an intrusion into a 'place.'"). Plaintiffs' Website communications are, at most, private activities. Tellingly, Plaintiffs cite zero cases in which a court has extended invasion of privacy for intrusion upon seclusion to a non-physical website. Plaintiffs' novel theory must be rejected. *See, e.g., Spilfogel*, 433 F. App'x at 727 (affirming dismissal because the plaintiff "cites to no Florida cases whatsoever in support of her intrusion upon seclusion claim").

Plaintiffs' attempt to conjure outrageousness sufficient to sustain their invasion of privacy claim is equally unpersuasive. Resp. at 18–19. Again, Plaintiffs fail to allege a single one of *their* communications that was allegedly intercepted by Adobe or the Programmatic Advertising Tools. The Complaint merely alleges hypothetical Website interactions—none of which pertains to Plaintiffs— that solely reflect the presence of Adobe Analytics. *See* Compl. ¶¶ 68–77. Plaintiffs further fail to allege any advertising or marketing of *their* information by Adobe or any other entity. For these reasons, Plaintiffs' ultimate conclusion—that Cleveland Clinic is commercializing their medical information obtained on the Website—is an "unwarranted deduction of fact" that the Court is "not required to admit as true." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010) (citations omitted). Plaintiffs' speculation untethered from any facts pertaining to them cannot support the legal conclusion that Cleveland Clinic's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985).

### C. Plaintiffs' Unjust Enrichment Claim Fails As a Matter of Law

#### 1. Plaintiffs cannot salvage their conclusory allegations regarding purported benefits conferred on Cleveland Clinic.

In their Response, Plaintiffs merely repeat the same, conclusory categories of information (e.g., appointment scheduling, health conditions, physician and facility searches, medical service and procedure searches, etc.) from the Complaint which themselves lack any facts showing what specific benefit Plaintiffs conferred on Cleveland Clinic. *See* Resp at. 21. Pleading such generalized, non-specific information does not sufficiently allege a benefit conferred to state a claim for unjust enrichment. *See, e.g., Vibo Corp., Inc. v. US Flue-Cured Tobacco Growers, Inc.*, 762 F. App'x 703, 706 (11th Cir. 2019) (affirming dismissal of unjust enrichment claim because the plaintiffs' failure to identify the "monetary and economic benefits" conferred "is the sort of element-related conclusion that *Iqbal* rejects"); *Allgood v. PaperlessPay Corp.*, No. 3:20-CV-516-MMH-MCR, 2022 WL 846070, at *11 (M.D. Fla. Mar. 22, 2022) ("[Plaintiff's] unadorned conclusory allegation, however, does not adequately identify such 'monetary payments' or any other direct benefit conferred by Plaintiffs on [Defendant].").

#### 2. Plaintiffs' damages theory remains untenable.

Plaintiffs concede the damages allegation regarding the lost economic value of Plaintiffs' data is "unartfully pled." Resp. at 23. To pivot from this faulty allegation, Plaintiffs ask the Court to focus on their restitution and disgorgement theory of damages for unjust enrichment. This theory is equally unavailing for a number of reasons.

First, by arguing for restitution and disgorgement, Plaintiffs openly admit their unjust enrichment claim seeks equitable relief. *See, e.g., Waldrop v. Southern Co. Servs., Inc.*, 24 F.3d 152, 158 (11th Cir. 1994) ("Restitution is generally defined as an equitable remedy designed to cure unjust enrichment."); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So.3d 689,

698 (Fla. 3d DCA 2018) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.") (internal quotations and citations omitted). However, in seeking equitable relief, it is axiomatic that Plaintiffs must allege they have an inadequate remedy at law. *See, e.g., Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1518 (S.D. Fla. 1996) ("To state a claim for unjust enrichment, plaintiffs must make [the lack of an adequate remedy at law] allegation clear in the complaint."). The Complaint entirely fails to allege an inadequate remedy law. Nor have Plaintiffs alleged[3] that their unjust enrichment claim is brought in the alternative to Plaintiffs' ECPA, FSCA, and invasion of privacy claims that provide remedies at law for the damages Plaintiffs seek. Plaintiffs' failure to plead an inadequate remedy at law is an additional basis to enter judgment on Count IV. *See, e.g., Krzyzanowski v. ROPK Holdings Inc*., No. 25-CV-81207-EA, 2026 WL 1106751, at *7 (S.D. Fla. Apr. 2, 2026), *report and recommendation adopted sub nom. Kryzanowski v. ROPK Holdings Inc.*, No. 9:25-CV-81207-EA, 2026 WL 1103454 (S.D. Fla. Apr. 23, 2026) (dismissing unjust enrichment claim because the plaintiff did "not allege the absence of an adequate remedy at law"); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) (dismissing unjust enrichment claim with prejudice because the plaintiff's statutory claims provided an adequate legal remedy).

Second, Plaintiffs' restitution and disgorgement theory fails for the same reason Plaintiffs fail to plausibly allege a conferred benefit: Plaintiffs contend this measure of damages is based on the "amount of unfair gain received" by Cleveland Clinic from Plaintiffs' data. Resp. at 22. However, the Complaint alleges no facts regarding any specific data provided by Plaintiffs or the

[3] Although Plaintiffs argue "they are permitted to plead unjust enrichment in the alternative," no such alternative pleading allegation exists in the Complaint. Resp. at 20. Plaintiffs cannot attempt to correct pleading deficiencies in their Response. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss.").

value of Plaintiffs' data. More critically, Plaintiffs offer no supporting factual allegations that Cleveland Clinic sold, monetized, or otherwise profited from *their* data provided through the Website. For example, Plaintiffs never allege they received targeted advertising or marketing emails from Adobe or any third-party following Plaintiffs' use of the Website to support the inferential leap that Cleveland Clinic commercialized Plaintiffs' data. Stated differently, Plaintiffs offer zero facts supporting an inference that Cleveland Clinic received unfair gains from Plaintiffs' data to support restitution or disgorgement. Plaintiffs' speculative allegations and legal conclusions are, again, not entitled to any presumption of truth.

### D. <u>Plaintiffs Should Not Be Granted Leave to Amend</u>

Plaintiffs' alternative request for leave to amend the Complaint must be rejected. To begin, Plaintiffs do not even attempt to satisfy Rule 15. Even if they had, amendment would be futile because the Complaint fails not because of missing facts that might be supplied through amendment, but rather because when the Court considers the facts pled and admitted by the defendant in its Answer, the legal claims being made are utterly implausible and legally unsupportable. This is the case for which Rule 12(c) was designed. Faced with such futility, this Court should act now, and decisively. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."); *Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012) (affirming denial of leave to amend where the plaintiff "provided no reason for the [] court to believe he could offer sufficient allegations to make a claim for relief plausible on its face").

* * * * *

For the foregoing reasons, the Court should grant the Motion and enter judgment against Plaintiffs and in favor of Cleveland Clinic as to the entirety of the Complaint.

Dated: May 22, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Counsel for Defendants The Cleveland Clinic Foundation and Cleveland Clinic Florida Health System Nonprofit Corporation*

*/s/ Caitlin F. Saladrigas*
Caitlin F. Saladrigas, Esq.
Florida Bar Number: 95728
777 South Flagler Drive
Suite 1900 – West Tower
West Palm Beach, Florida 33401
561.833.2000 telephone
561.650.8399 facsimile
caitlin.saladrigas@hklaw.com

Alexander M. Dudley, Esq.
Florida Bar Number: 1017976
515 E. Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
954.525.1000 telephone
954.463.2030 facsimile

Mark Melodia, Esq.(*admitted pro hac vice*)
787 7th Avenue, 31st Floor
New York, NY 10019
212.513.3583 telephone
212.385.9010 facsimile
mark.melodia@hklaw.com

Ashley Shively, Esq.*(admitted pro hac vice*)
560 Mission Street, Suite 1900
San Francisco, CA 94105
415.743.6900 telephone
ashley.shively@hklaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of May 2026, I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF filing system, and that a true and correct copy will be served via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner on all counsel of record.

*/s/ Caitlin F. Saladrigas*
Caitlin F. Saladrigas